IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Sue Doe, ) | |
| ) | Civil Action No.: 3:03-1918-MBS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Linda Kidd, Stan Butkus, Kathi Lacy, the ) | |
| South Carolina Department of Disabilities ) | **ORDER AND OPINION** |
| and Special Needs, Robert Kerr, and the ) | |
| South Carolina Department of Health and ) | |
| Human Services, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

At the time of the underlying complaint, Plaintiff Sue Doe was a twenty year old woman with developmental disabilities, including epilepsy, mild mental retardation, and cerebral palsy. Plaintiff filed a complaint on June 9, 2003, asserting, among other things, that she had been denied her rights under the Medicaid Act, 42 U.S.C. § 1396a et seq. In her Third Cause of Action, brought pursuant to 42 U.S.C. § 1983, Plaintiff asserted that Defendants had failed to provide Medicaid services to which she is entitled with reasonable promptness as required by 42 U.S.C. § 1396a(a)(8). Plaintiff sought injunctive relief and attorneys' fees and costs (Entry 1).

The matter came before the court on Defendants' motion for summary judgment, which motion was filed June 14, 2004 (Entry 46). With respect to the Third Cause of Action, Defendants argued that Plaintiff had no private cause of action under the Medicaid Act (Entry 47, 11-17), and thus Plaintiff had no right to proceed under § 1983. Defendants further argued that, even if Plaintiff possessed a private right of action, Plaintiff's claim did not implicate the Medicaid Act because

DDSN's decisions related to the condition of Plaintiff's health and not her financial eligibility to receive Medicaid services. Id. at 17-20. Plaintiff filed a memorandum in opposition to Defendants' motion on July 9, 2004, to which Defendant filed a reply on July 14, 2004. The court held a hearing on September 16, 2004. The court issued an order granting Defendants' motion for summary judgment on December 9, 2004 (Entry 63). Based upon certain representations made by Plaintiff at the summary judgment hearing, the court determined that Plaintiff's Third Cause of Action was moot because Plaintiff had received the relief requested. Thus, the court did not reach the merits of Defendants' arguments regarding the Third Cause of Action.

Plaintiff filed a motion for reconsideration on December 29, 2004 (Entry 66). See Fed. R. Civ. P. 59(e). Plaintiff contended, among other things, that the Third Cause of Action was not moot because after the hearing DDSN commenced reducing Plaintiff's services. In their supplemental response filed January 25, 2005, Defendants denied reducing services to Plaintiff, noting that a treating professional counselor had chosen not to accept the funding mechanism available to him, and that another professional counselor would be made available (Entry 69). Plaintiff's motion was denied by order filed April 22, 2005. Plaintiff thereafter appealed the court's order to the Court of Appeals for the Fourth Circuit on May 23, 2005.

The Fourth Circuit affirmed the court's ruling on Defendants' motion for summary judgment except as to the Third Cause of Action. The Fourth Circuit determined that Plaintiff's Third Cause of Action was not moot and that she had not waived her claim at the summary judgment hearing. The Fourth Circuit thereupon held that Plaintiff could proceed under § 1983 to address any failure by Defendants to comply with the reasonable promptness provision in the Medicaid Act. The Fourth

Circuit vacated the court's order to the extent it dismissed as moot the Third Cause of Action and remanded for further proceedings. See Doe v. Kidd, 501 F.3d 348 (4th Cir. 2007).

The matter now is before the court on motion for summary judgment filed by Defendants on May 14, 2009 (Entry 144). Plaintiff filed a response in opposition to Defendants' motion on May 21, 2009, to which Defendants filed a reply on May 28, 2009. Also before the court is Plaintiff's motion for summary judgment, which motion was filed May 14, 2009 (Entry 145). Defendants filed a response in opposition to Plaintiff's motion on May 21, 2009. The court held a hearing on May 29, 2009.

## I. FACTS

The facts are discussed in detail in the Fourth Circuit's opinion. Briefly, Medicaid is a program in which the federal government provides states with funding to furnish medical assistance to needy individuals. 42 U.S.C. § 1396; Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502 (1990). Defendant South Carolina Department of Health and Human Services (DHHS) is responsible for the administration and oversight of all Medicaid programs in South Carolina. DDSN is vested with all "authority over all of the state's services and programs for the treatment and training of persons with mental retardation, related disabilities, head injuries, and spinal cord injuries." S.C. Code Ann. § 44-20-240.

Congress created a Medicaid "waiver" program that permits the federal government to waive the requirement that certain disabled persons live in an institution in order to receive services funded by Medicaid. See 42 U.S.C. § 1396n(c). In South Carolina, this "waiver" is referred to as a Mental Retardation/Related Disabilities (MR/RD) waiver. When an application is made for services, including MR/RD waiver services, DHHS first determines whether the applicant is eligible for

3

Medicaid funding. Once this determination is made, DDSN makes a decision as to whether the applicant is eligible for services. Finally, if the applicant meets eligibility criteria, DDSN makes a determination regarding the "level of care" most appropriate to meet the applicant's needs in the least restrictive environment. Services may be provided in the home or in (1) a Supervised Living Program II ("SLP II"), comprised of an apartment where recipients of DSSN services reside together; (2) a Community Training Home I ("CTH I"), in which the individual receiving DSSN services resides in a private home with a family, one member of whom is a trained caregiver; or (3) a Community Training Home II ("CTH II"), in which the recipient is placed in a group home with caregivers who are present on a three-shift, twenty-four hour basis. Appeals from DDSN decisions are taken to a DHHS hearing office and thereafter may be appealed to a South Carolina Administrative Law Judge.

Plaintiff applied for MR/RD services under the waiver program in July 2002. In December 2002, prior to a determination being made regarding Plaintiff's eligibility, Plaintiff was placed on a non-critical waiting list for the MR/RD waiver program. In February 2003, Plaintiff was moved to the critical waiting list for the MR/RD waiver program based upon information regarding a deterioration in Plaintiff's mother's mental health. On March 7, 2003, Plaintiff was advised that she met certain DDSN eligibility requirements. She was moved to the head of the critical waiting list. A "plan of care" that included in-home services and residence with Plaintiff's mother was developed on March 17, 2003 for implementation on April 3, 2003. The plan included services in terms of adult day health care, personal care, respite care, and psychological evaluation. The combination of services was intended to meet Plaintiff's needs in her own home. The plan was approved April 3, 2003. On May 27, 2003 and May 29, 2003, however, Plaintiff made a demand for services in a CTH

I or CTH II facility of her choice, again based upon the declining mental health of Plaintiff's mother and the mother's intent to move out of state without Plaintiff. In a letter dated June 26, 2003, DDSN authorized residential habilitation services for Plaintiff in a CTH I facility. Plaintiff rejected the chosen provider because of reports of abuse and neglect of the residents. Plaintiff subsequently filed the within action. In July 2003, DDSN placed Plaintiff in a CTH II home in Newberry, South Carolina, where she received respite, or temporary, services. There is no dispute that Medicaid funding has been approved to aid in providing medical assistance to Plaintiff.

## II. DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. Id. Summary judgment should be granted only in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Md. Cmty. College, 955 F.2d 924, 928 (4th Cir. 1992).

Law/Analysis

The issue on remand is whether Defendants violated § 1396a of the Medicaid Act by providing Plaintiff with temporary respite services instead of providing her, with reasonable promptness, the residential habilitation services approved in her 2003 plan of care. See Doe v. Kidd, 301 F.3d 348, 353 (4th Cir. 2007). Under the Medicaid Act, "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

Defendants argued in their motion for summary judgment filed June 14, 2004, that Plaintiff's rights under the Medicaid Act were not violated. Relying on Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906 (7th Cir. 2003), Defendants asserted that the decision about whether a person actually needs DDSN services is different from the decision about how the services will be paid for. According to Defendants, Plaintiff's rights were not violated because Medicaid funding was approved with reasonable promptness. Defendants raise the identical arguments on remand.

In Bruggeman, the Court of Appeals for the Seventh Circuit found that

> the statutory reference to 'assistance' [in § 1396a(a)(8)] appears to have reference to financial assistance rather than to actual medical services . . . . Medicaid is a payment scheme, not a scheme for state-provided medical assistance, as through state-owned hospitals. The regulations that implement the provision indicate that what is required is a prompt determination of eligibility and prompt provision of funds to eligible individuals to enable them to obtain the covered medical services that they need, a requirement of prompt treatment would amount to a direct regulation of medical services.

Bruggeman, 324 F.3d at 910 (internal citations omitted). Since Bruggeman was decided, the Fifth, Sixth, and Tenth Circuits, as well as numerous district courts, have adopted the Seventh Circuit's

interpretation of "medical assistance" as that term is used in § 1396a(a)(8). See Equal Access for El Paso, Inc. v. Hawkins, 562 F.3d 724 (5th Cir. 2009); Okla. Chapter of Am. Academy of Pediatrics v. Fogarty, 472 F.3d 1208 (10th Cir. 2007); Westside Mothers v. Olszewski, 454 F.3d 532 (6th Cir. 2006); Susan J. v. Riley, 616 F. Supp. 2d 1219, 1242-45 (M.D. Ala. April 29, 2009). The court finds the Bruggeman analysis to be persuasive.

Plaintiff admits that she was provided funding for some services. However, Plaintiff contends that the funding was for services that were not included in her plan of care and that she did not want. Plaintiff seeks an order directing DDSN to provide residential habilitation services. The court concludes, however, that under Bruggeman, Plaintiff's rights under the Medicaid Act were limited to receiving funding with reasonable promptness. Simply stated, the court concludes that § 1396a(a)(8) does not require Defendants to provide specific services that an individual requests. Defendants' only obligation under § 1396a(a)(8) is to pay for medical services promptly when presented with the bill. See Okla. Chap., 472 F.3d at 1214 (quoting Mandy R. Ex rel. Mr. and Mrs. R. v Owens, 464 F.3d 1139 (10th Cir. 2006)). There is no evidence that Defendants failed to fulfill their obligations in this regard with respect to Plaintiff. Plaintiff's challenge to DDSN's level of care and placement decisions must be made through the administrative procedures available to her in state court.

### III. CONCLUSION

For the reasons stated, Defendants' motion for summary judgment (Entry 144) is **granted**. Plaintiff's motion for summary judgment (Entry 145) is **denied**.

On August 20, 2009, the court granted Defendants' motion for partial summary judgment as to the issue of damages. Plaintiff filed a motion for reconsideration on August 31, 2009 (Entry 165),

to which Defendants filed a response on September 17, 2009. Because Plaintiff is not entitled to any damages, Plaintiff's motion for reconsideration is **denied as moot**.

    **IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

January 28, 2010