IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Sue Doe, ) | |
| ) | C/A No. 3:03-1918-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Linda Kidd, Stan Butkus, Kathi Lacy, ) | **AMENDED** |
| the South Carolina Department of ) | **ORDER AND OPINION** |
| Disabilities and Special Needs, ) | |
| Robert Kerr, and the South Carolina ) | |
| Department of Health and Human ) | |
| Services, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action is before the court on remand from the Court of Appeals for the Fourth Circuit. In its opinion, the Fourth Circuit directed the court to devise appropriate remedial relief, and to determine reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, as more fully set out hereinbelow. The parties subsequently informed the court that they were attempting to resolve this case. When no settlement appeared to be forthcoming, the court issued an order on February 2, 2013 directing Plaintiff Sue Doe to file a motion for remedial relief, or else inform the court that the issues had been resolved.

Plaintiff filed a motion for remedial relief on February 20, 2013. Defendants filed a response in opposition to Plaintiff's motion on March 18, 2013, to which Plaintiff filed a reply on April 8, 2013. On June 4, 2013, the court held a hearing on Plaintiff's motion. During the hearing, the court accepted a "supplemental reply" from Plaintiff. On June 5, 2013, Defendants filed, with permission, a surreply to Plaintiff's supplemental reply. On June 14, 2013, Plaintiff filed an extensive response

to Defendants' surreply brief, to which Defendants responded and objected on July 3, 2013. Although the court concurs with Defendants' contention that Plaintiff has exceeded the scope of remand in her arguments and submission of exhibits, the court has reviewed and considered all relevant information in making its final determination.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff has developmental disabilities, including epilepsy, mild mental retardation, and cerebral palsy. She contends she is entitled to benefits under the Medicaid Act, 42 U.S.C. §§ 1396a et seq., because of her mental retardation. Defendant South Carolina Department of Health and Human Services (DHHS) is the state agency responsible for administering and supervising Medicaid programs in South Carolina. Defendant Department of Disabilities and Special Needs ("DDSN") is authorized by the South Carolina Mental Retardation, Related Disabilities, Head Injuries, and Spinal Cord Injuries Act to provide services to Medicaid-eligible persons.

The Medicaid program at issue involves an option plan administered by the state through which the federal government provides partial funding for medical assistance to needy individuals. Certain services are provided under a "waiver" program created by 42 U.S.C. § 1396n(c). Under this program, the Department of Health and Human Services ("HHS") waives a number of federal mandates for disabled adults, so that the state may "experiment" with methods of care. When a person makes an application for DDSN services, DHHS makes a determination as to whether the person is entitled to Medicaid funding. Thereafter, DDSN determines whether the person is eligible for DDSN services, and, if so, what "level of care" that person requires: i.e., whether the person can be cared for in the home or needs institutional care. With respect to mental retardation, DDSN, at the time of the underlying events, required three criteria to be met: (1) significantly subaverage

intellectual functioning; an IQ [Intelligence Quotient] of approximately 70 or below on an individually administered intelligence test; (2) concurrent deficits in present overall adaptive functioning (i.e., the person's effectiveness in meeting the standards expected for his age by his or her cultural group), with deficits in at least two of the following adaptive skills areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety; and (3) the onset of mental retardation is before age eighteen.  ECF No. 208-15, 12-13.

If an individual meets the applicable criteria, the next step is to determine the appropriate level of care.  Level of care evaluations take place at least every twelve months.  The available levels of care at issue in this case, from least to most restrictive, are:

- SLP II (Supervised Living Program II) - Typically an apartment situation where developmentally disabled individuals live together.

- CTH I (Community Training Home I) - Typically a private residence in which a recipient of DDSN services resides with a family, one of whom is a trained caregiver available at all times.

- CTH II (Community Training Home II) - Typically a group home with caregivers present in shifts around the clock.

Plaintiff applied for DDSN services in July 2002.  At that time, she was living at home and her mother was her primary caregiver.  In December 2002, DDSN, without making a determination as to Plaintiff's eligibility, placed Plaintiff on a non-critical waiting list for the Mentally Retardation/Related Disabilities (MR/RD) program.  DDSN gave Plaintiff provisional admission into the MR/RD program because Plaintiff appeared to be experiencing an acute exacerbation of seizures.

Plaintiff appealed DDSN's decision to a hearing officer and added a claim that DDSN failed to serve her within a reasonable amount of time as required by federal regulations. On or about February 18, 2003, while the appeal was pending before the hearing officer, DDSN moved Plaintiff to the top of the critical waiting list. On or about March 11, 2003, Plaintiff was awarded a MR/RD waiver slot and enrolled in the MR/RD waiver program. On or about March 17, 2003, DDSN developed a plan of care that involved in-home services. ECF No. 226-27. In March 2003, DDSN moved to dismiss the appeal. Plaintiff conceded that she had been moved to the top of the critical waiting list and that DDSN had found her eligible for services. Consequently, the hearing officer dismissed the appeal. ECF No. 226-28.

By letter dated March 28, 2003, Plaintiff was notified that her eligibility was to terminate. Plaintiff requested another hearing before a hearing officer in May 2003 on the grounds that she had not yet received the services promised by DDSN in her plan of care. Plaintiff also demanded immediate CTH I or CTH II residential treatment because the mental health of Plaintiff's mother had declined and she no longer was able to care for Plaintiff in the home.

Plaintiff brought the within action in federal court on June 9, 2003. Among other things, Plaintiff alleged in her third cause of action that Defendants violated the Medicaid Act by failing to provide her, with "reasonable promptness," the residential and other MR/RD Medicaid waiver services approved by DDSN in April 2003. See 42 U.S.C. § 1396a(a)(8). Late in June 2003, DDSN authorized CTH I or SLP II services for Plaintiff at a residential center. DDSN chose the Babcock Center as a provider; however, Plaintiff refused placement in the Babcock Center because she believed that the facility could not safely provide her with appropriate services. In July or August 2003, Plaintiff's mother left the state, and DDSN made an emergency placement of Plaintiff in a

4

CTH II facility in Newberry, South Carolina to receive "respite," or temporary, services. According to Defendants, Plaintiff was placed with a CTH II provider because no other facility was able to provide services to Plaintiff on such short notice.

With respect to the within action, Defendants filed a motion for summary judgment on June 14, 2004. Plaintiff filed a response in opposition to Defendants' motion on July 9, 2004, to which Plaintiff filed a reply on July14, 2004. The court held a hearing on September 16, 2004. By order filed December 9, 2004, the court granted Defendants' motion for summary judgment except as to Plaintiff's "reasonable promptness" claim as set forth in her third cause of action. Based upon statements made at the hearing, the court found Plaintiff's "reasonable promptness" claim to be moot because Plaintiff had received the services requested through the CTH II respite placement. ECF No. 63. After seeking relief pursuant to Fed. R. Civ. P. 59(e), Plaintiff filed a notice of appeal to the Fourth Circuit on May 23, 2005.

Meanwhile, on or about April 27, 2005, DDSN notified Plaintiff that she no longer was eligible for services under the MR/RD program because she no longer met the Intermediate Care Facility for the Mentally Retarded (ICF/MR) level of care criteria. Plaintiff appealed DDSN's determination and a hearing convened before a hearing officer on January 24-25, 2006 and April 27-28, 2006. On June 5, 2006, the hearing officer affirmed DDSN's determination. The hearing officer noted that between the ages of twelve and eighteen years Plaintiff was administered four psychological tests, and none of the qualified psychological examiners who performed the tests found Plaintiff to be mentally retarded. The hearing officer further observed that no school psychological examiner placed Plaintiff into a special education program for the mentally retarded. The hearing officer also noted that after the age of eighteen, Plaintiff was administered three

psychological tests. One of the examiners determined that Plaintiff is not mentally retarded, and the other two determined that she is mentally retarded. Based on all the information, the Hearing Officer concluded that Plaintiff is not mentally retarded and does not meet the Medicaid criteria of ICF/MR level of care under South Carolina applicable regulations. ECF No. 208-15.

Plaintiff appealed the hearing officer's decision to a state administrative law judge (ALJ). By order dated June 28, 2007, the ALJ directed the hearing officer to determine Plaintiff's interim care pending the conclusion of the appeal process and to consider additional material evidence that had not been available at the time of the June 5, 2006 decision. By order dated July 30, 2007, the hearing officer found that Plaintiff was experiencing significant anxiety residing in the Newberry, South Carolina CTH II facility. The hearing officer stated that Plaintiff's relationship with the CTH II staff had been poisoned and that being forced to stay at the CTH II placement in Newberry, South Carolina, compromised her health and safety.

The hearing officer noted that Defendants DHHS and DDSN are responsible for establishing and supervising Plaintiff's plan of care and the services she receives, and therefore the determination that Plaintiff should receive respite services rather than residential habilitation services was appropriate. Although Plaintiff had requested to be placed in a group home run by the United Cerebral Palsy of South Carolina, the hearing officer noted that United Cerebral Palsy of South Carolina is not an authorized provider of respite services, and that South Carolina law prevented DDSN from funding this organization for respite services. The hearing officer concluded that Plaintiff should be moved to a CTH II qualified to provide respite services, and that the new CTH II should be as close as possible to Plaintiff's home community. Consequently, Plaintiff was placed

in respite services in a CTH II facility in Aiken, South Carolina, where she remains to this day. Plaintiff did not appeal the ALJ's July 30, 2007 decision.

Regarding this court's order of December 9, 2004, the Fourth Circuit issued an opinion on September 19, 2007, in which it addressed, among other things, Plaintiff's claim that the court erred in dismissing as moot her claim that Defendants violated the Medicaid Act by providing her with temporary respite services instead of providing her, with "reasonable promptness," residential habilitation services approved in her 2003 plan of care. See Doe v. Kidd, 501 F.3d 348 (4th Cir. 2007). The Fourth Circuit observed that, "whatever misstatements or understatements [Plaintiff] made during the summary judgment hearing, she did not intend to relinquish her right to have the district court consider her reasonable promptness claim on its merits." Id. at 355. The Fourth Circuit noted that Defendants still had failed to provide Plaintiff with residential habilitation services; rather Defendants had maintained Plaintiff in the CTH II for respite services pending a final decision in state court as to Plaintiff's status. The Fourth Circuit determined that Plaintiff's placement was temporary and that the issues presented in her reasonable promptness claim were legally cognizable and ripe for consideration. The Fourth Circuit thereupon held that Plaintiff could proceed under § 1983 to address any failure by Defendants to comply with the reasonable promptness provision in the Medicaid Act, and remanded the case to this court for further review.

On November 15, 2007, the hearing officer issued a supplemental administrative order in which he considered the new evidence submitted by Plaintiff. The hearing officer determined, among other things, that DDSN was correct in determining the developmental period for purposes of defining mental retardation as prior to the age of eighteen years. The hearing officer concluded that the record included no report from an appropriately trained psychologist, psychiatrist, or

7

psychometric examiner supporting Plaintiff's contention that she is mentally retarded. The hearing officer again determined that Plaintiff does not meet the definition of a mentally retarded individual, and, therefore, does not satisfy the ICF/MR level of care criterial necessary for Medicaid MR/RD waiver services. ECF No. 208-5. On June 20, 2008, the ALJ affirmed the hearing officer's decision. Plaintiff appealed the ALJ's decision to the South Carolina Supreme Court.

On May 14, 2009, Defendants filed a motion for summary judgment in this court as to Plaintiff's "reasonable promptness" cause of action. Plaintiff filed a response in opposition on May 21, 2009, to which Defendant filed a reply on May 28, 2009. Also on May 14, 2009, Plaintiff filed a motion for summary judgment, to which Defendants filed a response in opposition on May 21, 2009. The court held a hearing on May 29, 2009.

On January 29, 2010, the court issued an order in which it concluded that, under Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 960 (7th Cir. 2003), Plaintiff's rights under the Medicaid Act are limited to receiving funding with reasonable promptness. The court determined that § 1396a(a)(8) does not require Defendants to provide specific services that an individual requests. Rather, Defendants' only obligation under § 1396a(a)(8) is to pay for medical services promptly when presented with the bill. The court found that Defendants fulfilled their obligations in this regard, and that Plaintiff's challenge to DDSN's level of care and placement decisions must be made through the administrative procedures available to her in state court. Accordingly, the court granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment. ECF No. 167. Plaintiff filed a notice of appeal on February 12, 2010.

On March 24, 2011, the Fourth Circuit issued an opinion affirming in part, reversing in part, and again remanding the case with instructions. See Doe v. Kidd, 419 F. App'x 411 (4th Cir. 2011).

The Fourth Circuit noted that DDSN had found in 2003 that Plaintiff's placement at a CTH I or SLP II setting would best meet her medical need for residential habilitation services in the least restrictive environment. On the narrow issue of whether the requisite services were provided to Plaintiff in a reasonably timely manner, the Fourth Circuit found that, after Plaintiff rejected the CTH I services offered in June 2003, Defendants were obligated to present her with alternative CTH I (or SLP II) services within a reasonably prompt period of time. The Fourth Circuit reiterated that Plaintiff has no right to chose between CTH I and CTH II services, but that she has a right to choose among qualified CTH I (or SLP II) providers. The Fourth Circuit determined that the provision of respite services at a CTH II facility did not relieve Defendants of their legal responsibility to subsidize Plaintiff's placement in a suitable CTH I (or SLP II) setting. The Fourth Circuit concluded that the ongoing failure of Defendants to fund residential habilitation services to which Plaintiff is entitled is the same as a failure to provide any services. Accordingly, the Fourth Circuit found it appropriate and within the equitable powers of the court to order Defendants to finance a SLP II or CTH I placement of Plaintiff's choice pending the resolution of the state appellate process. The Fourth Circuit remanded with instructions to enter summary judgment in favor of Plaintiff as to this issue, and for the court to devise appropriate remedial relief.

On December 28, 2011, the South Carolina Supreme Court issued an opinion with respect to Plaintiff's appeal of the ALJ's decision affirming the hearing officer's determination that Plaintiff is not mentally retarded. The supreme court found, among other things, that Plaintiff is disabled, in part because her Full Scale Intelligence Quotient (IQ) scores beginning at age twelve ranged from a low of sixty-six to a high of seventy-three. Doe v. S.C. Dep't of Health and Human Serv., 727 S.E.2d 605, 609 (S.C. 2011). Under federal law, the developmental period used to determine

supplemental security income (SSI) extends to age twenty-two. The supreme court observed that the South Carolina Legislature in 1990 had adopted in S.C. Code Ann. § 44-20-30 a definition of mental retardation in line with the SSI definition. Further, DDSN promulgated S.C. Code Ann. Regs. 88-210(f), which mirrors the SSI definition with respect to the age-of-onset requirement. The supreme court noted, however, that DDSN issued a "Policy of Determination of Eligibility" that improperly imposed a more restrictive diagnostic criterion for mental retardation for eligibility of waiver services in the form of an age-eighteen onset requirement. Accordingly, the supreme court reversed and remanded "for consideration of whether, applying the proper legal standard for mental retardation (onset prior to age twenty-two), Doe is eligible to continue to receive waiver services." Id. at 611.

As directed by the South Carolina Supreme Court, the hearing officer convened multiple days of evidentiary hearings throughout 2012 and 2013. During the course of the hearings, Plaintiff filed with the hearing officer a motion to enforce the Fourth Circuit's order that Defendants provide residential habilitation services to Plaintiff pending a final determination as to her eligibility for the MR/RD Medicaid waiver program. Plaintiff requested the hearing officer to either require Defendants to provide residential habilitation services in a CTH II (not CTH I or SLP II) setting, or issue a written order stating that the hearing officer's jurisdiction is limited solely to the issue of whether Plaintiff is mentally retarded. By order dated April 28, 2013, the hearing officer determined that he is without jurisdiction to revise his unappealed July 30, 2007 order moving Plaintiff from Newberry, South Carolina to a different CTH II qualified to provide her with respite services. The hearing officer also determined that he is without authority to enforce any decision issued by the Fourth Circuit. Consequently, the hearing officer denied Plaintiff's motion. ECF No. 226-5.

## II. DISCUSSION

Against this extensive factual and procedural history Plaintiff argues that the hearing officer's July 30, 2007 order moving Plaintiff to a CTH II in Aiken, South Carolina "superseded" DDSN's authorization of a CTH I or SLP II placement for Plaintiff. Plaintiff asserts that the hearing officer's finding regarding placement in a CTH II facility for respite services should be impressed upon the Fourth Circuit's opinion that Plaintiff be provided with the residential habilitation services set forth in her 2003 plan of care. Plaintiff agues that the court is required, on remand, to order remedial relief in the form of directing Defendants to provide Plaintiff with residential habilitation services in a CTH II–rather than CTH I or SLP II–setting. The court notes that Plaintiff did not make this argument to the Fourth Circuit or notify the Fourth Circuit during the pendency of its decision that Plaintiff's 2003 plan of care purportedly had been revised to authorize CTH II placement in lieu of CTH I or SLP II.

The court finds no support in the record for Plaintiff's contention that the hearing officer's July 30, 2007 order superseded Defendants' determination that she is entitled to placement in a CTH I or SLP II facility. Plaintiff originally was accepted for respite, or temporary, services, at a CTH II home in Newberry, South Carolina, because of exigent circumstances, i.e., her mother's inability to continue to care for her. Plaintiff's relationship with staff at the Newberry facility deteriorated to the point that Plaintiff's health was compromised. As set forth in detail hereinabove, the hearing officer ordered that Plaintiff be moved to a different CTH II facility qualified to provide Plaintiff with the respite services that had been approved by DDSN subsequent to Plaintiff's emergency placement. The court discerns no evidence that the hearing officer intended to alter the 2003 plan of care. Rather, the hearing officer maintained the status quo with respect to respite services with

the exception of moving Plaintiff from a deleterious situation involving the staff at the Newberry, South Carolina facility. The transfer from one CTH II setting to another was undertaken solely to protect Plaintiff's health and well-being. The court declines Plaintiff's invitation to order Defendants to provide her with residential habilitation services in a CTH II facility when such placement has not been authorized by DDSN.

The court's limited mandate from the Fourth Circuit is to direct Defendants "to provide [Plaintiff] with services in a SLP II or CTH I facility of her choice (at least pending the outcome of her state appeal)." Doe v. Kidd, 419 F. App'x 411, 419 (4th Cir. 2011). In this respect, Defendants are ordered to, within thirty (30) days of the date of this order, provide Plaintiff with a list of all potential qualified SLP II or CTH I placements, and update the list of all potential qualified SLP II or CTH I placements every fourteen (14) days thereafter until Plaintiff's state administrative process is exhausted or until Plaintiff accepts a placement, whichever comes first. Plaintiff is reminded that DDSN "selects the appropriate setting for the provision of waiver services. Once a setting is selected, recipients have a choice of qualified providers among those who offer services in the setting DDSN has approved[.]" Doe v. Kidd, 501 F.3d 348, 359 (4th Cir. 2007). Thus, Plaintiff is without authority to demand services or placement different from those established by DDSN in her 2003 plan of care. The court has no intent to supplant the hearing officer's unappealed decision moving Plaintiff from Newberry, South Carolina to Aiken, South Carolina. However, the emergency placement was for respite, or temporary, services only. The court discerns no conflict between the hearing officer's decision and the Fourth Circuit's mandate that Defendants are obligated to provide, or at least attempt to provide, the services and placement established in Plaintiff's 2003 plan of care.

Should either party unreasonably fail to comply with the court's order as set forth hereinabove, the opposing party may apply to the court for relief, to include contempt of court or a finding of futility.

For the reasons stated, Plaintiff's motion for remedial relief is **granted** to the extent set forth hereinabove. Plaintiff shall move for attorneys' fees within fifteen (15) days of the date of entry of this order.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

August 21, 2013

Nunc pro tunc date: August 12, 2013