IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Sue Doe, ) | |
| ) | C/A No. 3:03-1918-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Linda Kidd, Stan Butkus, Kathi Lacy, ) | |
| the South Carolina Department of ) | **ORDER AND OPINION** |
| Disabilities and Special Needs, ) | |
| Robert Kerr, and the South Carolina ) | |
| Department of Health and Human ) | |
| Services, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The lengthy history of this case is set forth in detail in the court's order filed August 12, 2013 (ECF No. 232). Briefly, Plaintiff Sue Doe has developmental disabilities. Defendant South Carolina Department of Disabilities and Special Needs (DDSN) determined in 2003 that Plaintiff's placement at a Community Training Home I (CTH I) or Supervised Living Program II (SLP II) setting would best meet her medical need for residential habilitation services in the least restrictive environment. Plaintiff rejected the offered placement and has been receiving emergency temporary, or respite, services in a Community Training Home II (CTH II).

Plaintiff filed the within action pursuant to 42 U.S.C. § 1983 on June 9, 2003, alleging, among other things, that Defendants deprived her of appropriate placement and services under the Medicaid Act, 42 U.S.C. §§ 1396a, et seq. During the pendency of the federal litigation, DDSN made a determination that Plaintiff no longer was eligible for services. Plaintiff has been pursuing

relief in state court regarding DDSN's decision to deny benefits at the same time that she has been pursuing relief in federal court to receive residential, rather than respite, habilitation services.

Plaintiff twice appealed this court's grant of summary judgment in favor of Defendants. Ultimately, the Court of Appeals for the Fourth Circuit found that, after Plaintiff rejected DDSN's initial choice for placement, DDSN was obligated to present her with alternative CTH I or SLP II services within a reasonably prompt period of time, which it failed to do. See 42 U.S.C. § 139a(a)(8). Accordingly, the Fourth Circuit held that Plaintiff had a cognizable claim under § 1983 for Defendants' failure to comply with the reasonable promptness provision of the Medicaid Act. The Fourth Circuit also directed the court to order Defendants to finance a CTH I or SLP II placement of Plaintiff's choice pending the resolution of the state appellate process.[1]

On August 21, 2013, the court issued an order in which it instructed Defendants to provide Plaintiffs with a list of all potential qualified CTH I or SLP II placements within thirty days of date of entry of the order, and to update the list every fourteen days thereafter until Plaintiff's state administrative process is exhausted or until Plaintiff accepts a placement, whichever comes first.

This matter now is before the court on Plaintiff's motion for attorneys' fees, costs, and expenses, which motion was filed on August 28, 2013 (ECF No. 236). Defendants filed a memorandum in opposition to Plaintiff's motion on September 26, 2013, to which Plaintiff filed a reply on October 22, 2013. Plaintiff filed an amended motion for attorneys' fees, costs, and expenses

---

[1] Defendants filed a status report on January 8, 2014, in which they informed the court that a Department of Health and Human Services (DHHS) hearing officer found Plaintiff to be mentally retarded. The DHHS hearing officer ordered DHHS to reopen Plaintiff's case and continue the eligibility process. ECF No. 274.

on October 29, 2013 (ECF No. 266). Defendants filed a response in opposition to Plaintiff's motion on November 15, 2013, as well as a surreply to Plaintiff's reply on November 25, 2013.

## DISCUSSION

Plaintiff moves for attorneys' fees pursuant to 42 U.S.C. § 1988(b), which provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]" A reasonable attorneys' fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys. Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986) (quoting Blum v. Stenson, 465 U.S. 886, 897 (1984)).

The Fourth Circuit previously has determined that Defendants violated Plaintiff's rights under the Medicaid Act as a matter of law, and that Plaintiff may recover attorneys' fees. Doe v. Kidd, 419 F. App'x 411, 413 (4th Cir. 2011). Thus, the court turns to the determination of what constitutes reasonable attorneys' fees.

The proper calculation of an attorney's fee award involves a three-step process. First, the court must "'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013) (quoting Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), that is: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of

the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Id. at n.5 (citing Barber v. Kimbrell's Inc., 577 F.2d 216, 266 n.28 (4th Cir. 1978)). Next, the court must "'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" Id. (quoting Robinson, 560 F.3d at 244). Finally, the court should award "'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" Id. (quoting Robinson, 560 F.3d at 244).

In her amended motion, Plaintiff seeks attorneys' fees as follows:

|                   | Hourly Rate | Fed. Hours   | State Hours  |
|-------------------|-------------|--------------|--------------|
| Patricia Harrison | $425.00     | 1,770.4      | 1,265.0      |
| Stuart Andrews    | $450.00     |              | 446.0        |
| J.L. Cooke        | $240.00     |              | 516.9        |
| L.A. Sackett      | $180.00     |              | 578.4        |
| R.G. Stroman      | $120.00     |              | 83.3         |
| Nancy Law         | $150.00     | 317.5        | 140.0        |
| Armand Derfner    | $480.00     | 148.8        |              |
| Totals:           |             | $871,469.00  | $997,489.00  |

As an initial matter, the court concludes that Plaintiff's efforts in state court are not compensable under § 1988. The work performed by counsel in state court related to Defendants' determination to terminate the benefits to which it had found Plaintiff entitled in 2003. The state court proceedings were not necessary to advance the litigation in this court, i.e., whether Defendants provided placement at a qualified CTH I or SLP II facility with reasonable promptness. See Webb

4

v. Bd. of Edu., 471 U.S. 234 (1985).[2] The court therefore turns to the $871,469.00 demanded for the within litigation.

    1.    <u>Time and labor expended</u>.  The court is mindful that this case has spanned nearly ten years.  Nevertheless, the court finds the time expended to be excessive under the circumstances.  For example, in 2008, the court was required to hold a hearing and issue an order instructing lead counsel as to inappropriate questions that could not be propounded during depositions.  The court also notes that lead counsel's time includes numerous entries for copying, organizing files, and other clerical/paralegal tasks.  The court concludes that lead counsel's hours should be reduced by 25 percent.

Similarly, the court finds lead counsel's paralegal's hours to be excessive.  For example, between December 29, 2004 and December 31, 2004, counsel's paralegal spent approximately 12 hours reviewing and organizing the file.  The paralegal also included billable hours performing clerical tasks.  The court concludes that lead counsel's paralegal's hours also should be reduced by 25 percent.

The court is satisfied with the number of hours billed by counsel Derfner, and Defendants raise no objection to the time expended by him in this case.

    2.    <u>Novelty and difficulty of the questions raised</u>.  The court finds that counsel addressed a novel question of law in arguing that Plaintiff was entitled to proceed under § 1983 to assert her right to receive services with reasonable promptness.  Lead counsel states that the within action has been cited in courts in other states and in amicus briefs filed by the United States Department of

---

[2] According to Defendants, Plaintiff filed a petition for attorneys' fees in the Administrative Law Court seeking reimbursement for the same activities.  ECF No. 274.

Justice as an important ruling recognizing a private right of action under § 1983 to challenge state administrative actions that violate the Medicaid Act.

       3.      <u>Skill required to properly perform the legal services rendered</u>. Lead counsel's profile indicates her areas of practice are guardianship and conservatorship law, probate law, elder law, estate planning law, and taxation law. <u>See</u> http://www.martindale.com/Patricia-L-Harrison/law-firm-1270145.htm (located March 19, 2014). Lead counsel attests that most of her work since graduating from law school in 1988 has been in the area of government benefits issues, including Medicaid and disability rights. ECF No. 266-1, ¶ 4.

       4.      <u>Attorney's opportunity costs in pressing the instant litigation</u>. "This factor typically applies in circumstances where counsel was required to forgo some measure of compensation because of the time devoted to a case." <u>Uhlig, LLC v. Shirley</u>, 895 F. Supp. 2d 707, 716-17 (D.S.C. 2012) (citing <u>Daly v. Hill</u>, 790 F.2d 1071, 1082 n.15 (4th Cir. 1986) (noting that the effect of pursuing a civil rights action may require an adjustment of the hourly attorney fee rate in order to fully compensate an attorney for his or her lost opportunities to pursue other, more lucrative work)). Lead counsel contends that she has not been able to take on paying clients because of the within litigation, but the court can find no foundation in the record for this assertion. The court's docket shows sporadic activity. The court is not persuaded that this factor affects Plaintiff's motion for attorneys' fees.

       5.      <u>Customary fee for like work</u>. In determining whether a requested rate is reasonable, the Court should consider "prevailing market rates in the relevant community." <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 175 (4th Cir.1994) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984)). As noted hereinabove, lead counsel seeks an hourly rate of $425.00 for herself and

$150.00 for her paralegal. These figures are not customary in the Columbia, South Carolina market. The court notes that, for complex civil litigation, the South Carolina Attorney General pays attorneys with over ten years of experience up to $150.00 per hour. See http://www.scag.gov/civil (located March 19, 2014). In Evans v. Milliken & Co., 2014 WL 508508 (D.S.C. Feb. 6, 2014), the Honorable G. Ross Anderson determined that $280.00 was an appropriate hourly rate for an employment law case. In H&C Corp., Inc. v. Puka Creations, LLC, 2013 WL 2303248 (D.S.C. May 24, 2013), the Honorable R. Bryan Harwell found that $265.00 was an appropriate hourly rate in an intellectual property case. See also Uhlig, 895 F. Supp. 2d at 717 (finding $250.00 hourly rate for partners and $80.00 per hour for paralegals to be customary in copyright infringement case).

  6. Attorney's expectations at the outset of the litigation. Lead counsel states that she took the case on a contingent basis and believed she would receive fees if Plaintiff prevailed. The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. Savani v. URS Prof'l Solutions LLC, 2014 WL 172503, *5 (D.S.C. Jan. 15 2014) (citing Phillips v. Crown Cent. Petroleum Corp., 426 F. Supp. 1156, 1170 (D. Md. 1977)). The court will take this factor into consideration in determining a reasonable attorneys' fee.

  7. Time limitations imposed by the client or circumstances. Lead counsel states that the combination of the federal and state proceedings has at times been almost unmanageable. The court notes that it has consistently granted motions to extend time when requested by the parties. The court concludes that this factor has no affect on its analysis.

  8. Amount in controversy and the results obtained. The most critical factor in calculating a reasonable fee award is the degree of success obtained; when a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole

7

times a reasonable hourly rate may be an excessive amount. Brodziak v. Runyan, 145 F.3d 194, 196 (4th Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

In her complaint, Plaintiff asserted the following claims: (1) The state has deprived Plaintiff of rights to Medicaid services in violation of 42 U.S.C. § 1983 (First Cause of Action); (2) DDSN and HHS have violated Plaintiff's due process rights (Second Cause of Action); (3) Defendants have failed to provide services with reasonable promptness in violation of 42 U.S.C. § 1396a(a)(8) (Third Cause of Action); (4) Defendants have violated Plaintiff's freedom of choice of providers for medical and residential habilitation services (Fourth Cause of Action); (5) Violation of Olmstead and the Americans with Disabilities Act (ADA) (Fifth Cause of Action); (6) Failure of HHS to oversee MR/RD Medicaid Program and to assure that all applicants be notified of all available services (Sixth Cause of Action); (7) Improper termination of MR/RD waiver services (Seventh Cause of Action). Plaintiff sought injunctive relief, including directing DDSN to provide Plaintiff with residential habilitation services through the provider of Plaintiff's choice.

On December 9, 2004, the court granted summary judgment in favor of Defendants as to Plaintiff's Fourth, Fifth, Sixth, and Seventh Causes of Action, and found Plaintiff's remaining causes of action to be moot. Plaintiff appealed the court's finding that the First and Third Causes of Action were moot, and abandoned any claims under the Second Cause of Action. The Fourth Circuit determined that Plaintiff was entitled to pursue her reasonable promptness claim under § 1983 (First Cause of Action), but that her freedom of choice claim under § 1396a(a)(23) of the Medicaid Act lacked merit. The action was remanded on this sole issue. The court again granted summary judgment in favor of Defendants on January 29, 2010. The Fourth Circuit reversed, finding that Plaintiff had not received the services for which she had been found eligible in 2003. The Fourth

8

Circuit directed the court to employ its equitable powers to fashion a remedy, which, as set forth hereinabove, has been established, i.e., the requirement that Defendants provide Plaintiff with available CTH I or SLP II placements. However, from the time of her preliminary injunction motion until her most recent Rule 59(e) motion, Plaintiff has urged the court to supplant DDSN'S decision with an order that Plaintiff be provided residential habilitation in a CTH II facility.

9.     Experience, reputation, and ability of the attorney. Lead counsel's declaration indicates that she has little litigation experience. See ECF No. 266-1, ¶ 9 (listing six cases, three of which involve the within Plaintiff). Counsel has earned recognition, however, as an advocate, having received awards from advocacy organizations such as The Arc; United Cerebral Palsy; The South Carolina Chapter of the National Academy of Elder Law Attorneys; Protection & Advocacy for Persons with Disabilities, Inc.; and the National Academy of Elder Law Attorneys. She also has served on the South Carolina Supreme Court's Access to Justice Commission. In contrast, Counsel Derfner is a litigator who has been practicing civil rights law for forty years. See http://dawlegal.com/profiles.html (found March 20, 2014). He was named Trial Lawyer of the Year in 2002 by Trial Lawyers for Public Justice, and with his law partners received a Pro Bono Publico Award from the American Bar Association in 2007.

10.     Undesirability of the case within the legal community in which the suit arose. This factor takes into account that attorneys sometimes undertake litigation that is "not pleasantly received by the community or [the attorney's] contemporaries." Johnson v. Ga. Hwy. Exp. Inc., 488 F.2d 714, 719 (5th Cir. 1974). The court agrees with lead counsel that Medicaid cases can be arduous, time consuming, and expensive, especially when taken on a contingency basis, see ECF No. 266-1, ¶¶ 10, 19, 20, and thus perceived as undesirable.

11. <u>Nature and length of the professional relationship between attorney and client</u>. The court does not perceive that lead counsel would "vary [her] fee for similar work in the light of the professional relationship of the client with [her] office." <u>Id.</u> This factor has no effect on the fee award.

12. <u>Attorneys' fees awards in similar cases</u>. The court has located a number of Medicaid enforcement actions with attorneys' fees awards: <u>Jackson v. Selig</u>, 2013 WL 1934008 (E.D. Ark. May 8, 2013) ($29,968.75); <u>Moore ex rel. Moore v. Cook</u>, 2012 WL 5362892 (N.D. Ga. Oct. 31, 2012) ($592,148.31); <u>Hauenstein ex rel. Switzer v. Okla, ex rel. Okla. Dep't of Human Servs.</u>, 2011 WL 3819388 (W.D. Okla. Aug. 26, 2011) ($25,452.50).

The court concludes that, given lead counsel's limited litigation experience, the nature of the case, and the market in South Carolina, $280.00 is an adequate hourly rate. The court will reduce lead counsel's paralegal's hourly rate to $85.00 per hour. Given attorney Derfner's national reputation, the court will approve his fee at $450.00 per hour.

|                    | Hourly Rate | Fed. Hours              |
|--------------------|-------------|-------------------------|
| Patricia Harrison  | $280.00     | 1,327.80 (1770.4 x .75) |
| Nancy Law          | $ 85.00     | 238.13 (317.5 x .75)    |
| Armand Derfner     | $450.00     | 148.80                  |

The lodestar figure is $458,985.05.

At this juncture, the court must subtract fees for hours spent on unsuccessful claims. The court has reviewed Defendants' submission (ECF No. 245-4) and Plaintiff's objections thereto, and concludes that Defendants' arguments are well taken. Accordingly, the referenced hours are reduced as follows, taking into account the fact that the court already has reduced a number of hours for excessiveness and clerical tasks:

|  | Hourly Rate | Fed. Hours |
|---|---|---|
| Patricia Harrison | $280.00 | 627.80 (1,327.80 - 700.00) |
| Nancy Law | $ 85.00 | 168.13 (238.13 - 70) |
| Armand Derfner | $450.00 | 148.80 |

These figures yield an attorneys' fee of $265,675.05.

Turning to the requirement that the court award a percentage of the remaining amount, depending on the degree of success enjoyed by Plaintiff, the court concludes that $100,000.00 is a reasonable attorneys' fee. The court acknowledges lead counsel's many years of passionate advocacy for her client. However, although she prevailed on her claim that Plaintiff did not receive services with reasonable promptness, there has been no change in the status quo. DDSN was required to tender alternate placement in a CTH I or SLP II facility in 2003 when the initial offer was rejected. DDSN has been complying with its obligation to do so since August 2013, and, to the court's knowledge, no CTH I or SLP II placement has been acceptable to Plaintiff. In the meantime, as observed hereinabove, lead counsel's objective in this litigation has been to obtain residential habilitation for Plaintiff in a CTH II facility, a remedy this court is unable to provide. Plaintiff's success has been limited under the circumstances.

For the reasons stated, Plaintiff's motion for attorneys' fees, as amended (ECF No. 236, 266) is granted in the amount of $100,000.00. The court will allow costs in the amount of $5,523.13.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour  
Senior United States District Judge

Columbia, South Carolina  
March 31, 2014.